J-S53042-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 1198 EDA 2020 |
| JASON RESSMAN | | |

Appeal from the Order Entered May 26, 2020
In the Court of Common Pleas of Monroe County Criminal Division at
No(s):  CP-45-CR-0002705-2018

BEFORE:  SHOGAN, J., LAZARUS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:          **FILED:  APRIL 26, 2021**

The Commonwealth appeals from the May 26, 2020 order of the Court of Common Pleas of Monroe County (trial court) granting in part and denying in part the post-sentence motion filed by Jason Ressman (Ressman).  The Commonwealth argues that the trial court abused its discretion in holding that Ressman's conviction for driving under the influence (DUI)—BAC 0.10%-0.159% was against the weight of the evidence and that his conviction for careless driving was supported by insufficient evidence.  We affirm.

**I.**

We glean the following facts from the certified record.  On April 29, 2018, Pennsylvania State Police (PSP) Trooper Mark Bower (Trooper Bower)

_____

[*] Retired Senior Judge assigned to the Superior Court.

was on patrol when he observed a vehicle swerving back and forth between the fog line and the double-yellow line on a two-lane road. Notes of Testimony, 10/15/19, at 40. When he ran the license plate for the vehicle, he learned that the registered owner was a woman whose driver's license was suspended. *Id.* After following the vehicle for approximately one mile, he initiated a traffic stop. *Id.* at 41. Ressman was driving the vehicle at the time. *Id.*

When speaking with Ressman, Trooper Bower observed a strong odor of alcohol and noticed that his eyes were glassy and bloodshot and his speech was slurred. He had Ressman perform standard field sobriety tests and observed several cues suggesting that Ressman was intoxicated. Trooper Bower then requested that Ressman submit to a preliminary breath test, but Ressman refused and requested a blood test instead. Trooper Bower took Ressman to the Monroe County DUI Center for a blood test, which was performed approximately one hour after the traffic stop. *Id.* at 49-50.

Kenneth Mayberry (Technician Mayberry), an employee at the PSP's Wyoming Regional Crime Laboratory, testified at trial as an expert regarding blood alcohol concentration (BAC). *Id.* at 97-98. Technician Mayberry tested Ressman's sample twice via dual-column gas chromatograph to ascertain his BAC and obtained results of 0.1118% and 0.1114%. *Id.* at 99-101. He concluded that Ressman's BAC was 0.111% plus or minus 0.014. *Id.* at 104.

The Commonwealth charged Ressman with DUI—general impairment, DUI—BAC 0.10%-0.159%, driving without a license, and careless driving.[1] Prior to trial, the Commonwealth filed a motion for leave to amend the criminal information to add a count of DUI—BAC 0.08%-0.09% based on the margin of error for Ressman's BAC test results.[2]  The trial court granted the motion and subsequently instructed the jury regarding the different BAC tiers in the DUI statute.  **Id.** at 184-85.  The verdict slip was styled as follows for the second count of DUI:

| 2. DUI—Blood Alcohol Concentration Greater than 0.08% | _____ GUILTY _____ NOT GUILTY |
|---|---|
| If you find the Defendant guilty of this offense, you should select the highest range of alcohol concentration that has been proven beyond a reasonable doubt and place a check mark on the blank line next to that range.  All other blank lines should remain empty. | _____ From 0.08% to 0.10% <br><br> _____ From 0.10% to 0.159% <br><br> _____ 0.16% or above |

Following reception of the evidence, the jury found Ressman not guilty of DUI—general impairment and guilty of DUI—BAC greater than 0.08%, but specifically found that the Commonwealth had proven beyond a reasonable doubt that Ressman's BAC was between 0.10% and 0.159%.  **Id.** at 193-94.

---

[1] 75 Pa.C.S. §§ 3802(a)(1), 3802(b), 1501(a), & 3714(a).

[2] 75 Pa.C.S. § 3802(a)(2).  Additionally, the Commonwealth moved to amend the information to reflect that all DUI offenses were third offenses for grading purposes.

Immediately following the verdict, the trial court adjudicated Ressman not guilty of driving without a license and guilty of careless driving.

On December 6, 2019, the trial court sentenced Ressman to 90 days to 24 months of incarceration followed by two years of probation for the count of DUI. Ressman filed a timely post-sentence motion seeking, *inter alia*, judgment of acquittal or a new trial on the DUI charge. He argued that the margin of error for the BAC results indicated that his actual BAC could have been below the 0.10% threshold, so the evidence was insufficient to support his conviction or, in the alternative, the verdict was against the weight of the evidence. He also motioned for arrest of judgment or a new trial on the careless driving charge, arguing that the evidence at trial did not support the trial court's verdict.

On May 26, 2020, the trial court issued an order granting Ressman's motion for a new trial on the DUI charge, finding that the jury's verdict was against the weight of the scientific evidence presented at trial. The trial court primarily relied on **Commonwealth v. Landis**, 89 A.3d 694 (Pa. Super. 2014), and **Commonwealth v. Sibley**, 972 A.2d 1218 (Pa. Super. 2009), in holding that Ressman had raised a meritorious weight claim based on the margin of error for the BAC results. Additionally, the trial court granted the motion for arrest of judgment on the careless driving charge and held that

there was insufficient evidence set forth at trial to support that conviction.[3]

The Commonwealth filed a timely notice of appeal[4] and it and the trial court

have complied with Pa.R.A.P. 1925.

**II.**

On appeal, the Commonwealth raises five issues which we have

reordered for ease of disposition:

- whether the trial court abused its discretion by finding that the guilty verdict for the charge of DUI—BAC 0.10%-0.159% was against the weight of the evidence;

- whether the trial court abused its discretion in setting aside the jury's credibility determination;

- whether instead of granting a new trial the trial court should have adjudged Ressman guilty of the lesser-included offense of DUI—BAC 0.08%-.010%;

- whether the trial court misapplied case law in holding that it could not find Ressman guilty of the lesser-included offense; and

- whether the trial court abused its discretion by granting Ressman's motion for arrest of judgment on the charge of careless driving.

---

[3] Ressman raised several other claims of error in the motion which were denied as moot.

[4] *See* Pa.R.A.P. 311(a)(6) (an appeal may be taken as of right from "an order in a criminal proceeding awarding a new trial. . . where the Commonwealth claims that the trial court committed an error of law").

**A.**

As the Commonwealth's first two issues on appeal are related, we address them together.[5] The Commonwealth argues that the trial court abused its discretion and misapplied prevailing case law when it determined that the jury's guilty verdict for DUI—BAC 0.10%-0.159% was against the weight of the evidence because those results were outside the margin of error. It contends that the gas chromatography testing procedure used in this case is more reliable than the testing procedure the prosecution had relied upon in **Landis**. Pointing out that its expert witness testified that he tested Ressman's blood sample twice, obtaining BAC results of 0.1118% and 0.1114%, the Commonwealth argues that the jury heard all evidence related to the test results and the possible margin of error and ultimately chose to credit Technician Mayberry's testimony that Ressman's BAC exceeded 0.10%. It

---

[5] When evaluating a challenge to the weight of the evidence to support a conviction, this Court does not reweigh the evidence presented at trial, but rather evaluates the trial court's denial of the motion for a new trial for an abuse of discretion. **Commonwealth v. Clay**, 64 A.3d 1049, 1054-55 (Pa. 2013). An abuse of discretion occurs "where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will." **Id.** (citation omitted). "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." **Id.**

contends that the trial court abused its discretion because it disregarded that credibility determination when ruling on the weight claim.[6]

In ruling on the post-sentence motion, the trial court reviewed two cases from this Court distinguishing between sufficiency and weight claims predicated on the margin of error for BAC test results. **See** Opinion on Post-Sentence Motion, 5/26/20, at 5-9. In **Commonwealth v. Sibley**, 972 A.2d 1218, 1219 (Pa. Super. 2009), the defendant was convicted of DUI—BAC greater than 0.16%. At trial, a laboratory employee testified that the defendant's blood test had revealed a BAC of 0.162%, and the coefficient of variation[7] for the test result indicated that his actual BAC could have fallen

---

[6] In reaching a verdict, the fact-finder is entitled to weigh the evidence and determine the credibility of the witnesses, and a new trial should not be granted merely because the trial court would have reached a different verdict. **Commonwealth v. Talbert**, 129 A.3d 536, 545 (Pa. Super. 2015); **Commonwealth v. Clay**, 64 A.3d 1049, 1055 (Pa. 2013). "In order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." **Talbert**, **supra**, at 546 (citation omitted). However, in considering a motion for a new trial based on the weight of the evidence, the trial court "is under no obligation to view the evidence in the light most favorable to the verdict winner." **Commonwealth v. Widmer**, 744 A.2d 745, 751 (Pa. 2000). "Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence." **Talbert**, **supra**, at 546 (citations omitted).

[7] "The coefficient of variation relates to the precision of the testing equipment. The significance of the coefficient of variation is that, if the equipment were used to take multiple tests on a single sample, those tests would likely yield

anywhere in the range of 0.157% to 0.167%. *Id.* The defendant appealed, claiming that the evidence was insufficient to support his conviction because his actual BAC could have fallen below that 0.16% threshold.

On review, this Court held that the range of variation implicates the weight of the evidence to support a conviction, not the sufficiency of the evidence. *Id.* We concluded that "[the defendant's] argument would demand a test result so high and/or a coefficient of variation so low that his actual BAC could not possibly have been beneath 0.160%. The law simply does not require this level of certainty in criminal verdicts." *Id.* at 1220. The fact-finder was entitled to weigh the BAC test result in the context of the coefficient of variation and conclude that the Commonwealth had proven beyond a reasonable doubt that the defendant's BAC exceeded 0.16%.

*Sibley*, however, involved a claim that the evidence was insufficient to support the defendant's conviction. In *Commonwealth v. Landis*, 89 A.3d 694 (Pa. Super. 2014), we addressed an analogous claim to the situation herein, where the defendant challenged the weight of the evidence to support his conviction. In *Landis*, the defendant was convicted of DUI—BAC greater than 0.16% based on a BAC test result of 0.164%. *Id.* at 697. The evidence at trial established that the testing method had a margin of error of ten

---

somewhat differing results all within a certain range." *Commonwealth v. Sibley*, 972 A.2d 1218, 1219 (Pa. Super. 2009).

percent, reflecting a possible range for the defendant's BAC between 0.147% and 0.180%. *Id.* at 697-98. Following his conviction, the defendant appealed and claimed that the weight of the BAC evidence did not support his conviction for DUI—BAC greater than 0.16%.

We agreed, finding that "the trial record did not contain a reasoned basis for accepting the specific reading of 0.164% as either accurate or precise. There was no support for a finding that the reading registered by the Avid Axsym machine was any more reliable than the possible blood-alcohol levels within the 10% margin of error." *Id.* at 701. Because there was no evidence to allow the jury to more accurately determine the defendant's BAC within the possible margin of error, we concluded that the verdict must have been based on impermissible speculation as to the BAC element of the offense. *Id.* As a result, we vacated the conviction and remanded for a new trial.

Here, the BAC evidence was admitted through Technician Mayberry, who tested the samples of Ressman's blood. Technician Mayberry described the process of testing a blood sample for BAC with a dual-column chromatograph. Notes of Testimony, 10/15/19, at 98-99. He explained that he tested Ressman's blood sample twice, obtaining BAC results of 0.1118% and 0.1114%. *Id.* at 100. In his final report, he concluded that Ressman's

BAC was 0.111% "with an uncertainty of plus or minus 0.014."[8] *Id.* at 105.

On cross-examination, Technician Mayberry confirmed that the test results reflected the BAC at the time the blood was drawn and could indicate an actual BAC of up to 0.125% or as low as 0.097%. *Id.* at 112. There was no further evidence regarding the possible range of variation for the BAC or whether any particular value within that range was more likely to represent Ressman's actual BAC.

In addressing the Commonwealth's claim of error in its opinion pursuant to Pa.R.A.P. 1925(a), the trial court explained:

> The margin of error was calculated in the same report presented to prove [Ressman's] BAC. It formed an intrinsic part of the report's claim to have measured a BAC. To accept on result of that measurement while rejecting the companion result of the same measurement would be arbitrary. Whatever credibility the one has must go to the credibility of the other, so that the BAC is accepted, then the margin of error must be accepted to the same extent. The only way to discredit the margin of error is to discredit the method used to measure BAC.
>
> Furthermore, the record contains no evidence to show whether the uncertainty tends to make the reported percentage err in the upward or downward direction, or by what amount within the margin of error. Without such information, a fact-finder has no basis to accept the interpretation that [Ressman's] actual BAC lies closer to the reported value than to 0.08%.

---

[8] The written report, which the Commonwealth admitted as evidence, further noted that "measurement uncertainty is reported at a 99.73% level of confidence for all blood alcohol analyses." Commonwealth's Exhibit 3, 5/29/2018 (unnecessary capitalization omitted).

Trial Court Opinion, 7/1/20, at 4-5. The trial court's reasoning mirrors that of this Court in *Landis*, *supra*, and it did not abuse its discretion in granting Ressman's motion for a new trial.

Just like in *Landis*, the Commonwealth's BAC evidence established a possible range of variation that traversed two tiers of DUI offenses. In *Landis*, we concluded that the verdict was based on impermissible speculation regarding the defendant's actual BAC within the range of variation, as there was no evidence at trial to place the defendant's actual BAC anywhere specific within the range. *Landis*, *supra*, at 701. Thus, the weight of the evidence did not support the conclusion that the defendant's BAC was above or below 0.16%. Similarly, Technician Mayberry's testimony did not establish that any particular value within the range of variation was more likely than any other, and no further evidence was admitted at trial to allow the jury to make a more precise determination about Ressman's BAC. While the jury apparently credited Technician Mayberry's testimony in choosing to convict, it was not an abuse of discretion for the trial court to set aside the jury's credibility determination because the standard for deciding a weight claim does not require the trial court to view the evidence in the light most favorable to the Commonwealth.[9] *See Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa.

---

[9] The trial court correctly concluded that the BAC evidence was sufficient to support the conviction for DUI—BAC 0.10%-0.159% because the jury credited Technician Mayberry's testimony, and it, therefore, denied Ressman's post-

2000). Because the trial court correctly applied the law, it did not abuse its discretion in concluding that the guilty verdict was based on speculation regarding Ressman's actual BAC.

**B.**

The Commonwealth also contends that the trial court erred in finding that it could not adjudge Ressman guilty of the lesser-included offense of DUI—BAC 0.08%-0.10% but rather was constrained to the remedy of granting a new trial. The Commonwealth argues that the uncontroverted evidence at trial established that Ressman's BAC was at least above 0.08%. It contends that the jury made this factual finding when it convicted Ressman of the second DUI count, which was styled generally on the verdict slip as "DUI— Blood Alcohol Concentration Greater than 0.08%." Based on the styling of the verdict slip, the Commonwealth contends that the jury necessarily found Ressman guilty of DUI—BAC 0.08%-0.10%. Instead of granting a new trial, the Commonwealth contends that the trial court should have found Ressman guilty of that lesser-included offense.

The DUI statute identifies three distinct offenses based on different tiers of a defendant's BAC. A general impairment BAC offense requires proof of a BAC of "at least 0.08% but less than 0.10%." 75 Pa.C.S. § 3802(a)(2). A

---

sentence motion for arrest of judgment. **See** Opinion on Post-Sentence Motion, 5/26/20, at 6, 12 (citing **Sibley**, **supra**).

"high rate of alcohol" DUI offense requires proof of a BAC of "at least 0.10% but less than 0.16%." 75 Pa.C.S. § 3802(b). Finally, the "highest rate of alcohol" DUI offense requires proof of a BAC that is "0.16% or higher." 75 Pa.C.S. § 3802(c). This Court has held that lower BAC offenses are lesser-included offenses of the higher-tier offenses, as the crimes only differ as to the BAC the Commonwealth is required to prove beyond a reasonable doubt at trial. **Commonwealth v. Houck**, 102 A.3d 443, 453 (Pa. Super. 2014). That means the general impairment BAC offense in § 3802(a)(2) is a lesser-included offense of the high rate of alcohol DUI offense outlined in § 3802(b).

Here, the Commonwealth initially charged Ressman with one count of DUI—general impairment and one count of DUI—BAC 0.10%-0.159%. Prior to trial, the Commonwealth moved to amend the information to add a count of DUI—BAC 0.08%-0.10%. **See** Motion for Leave to Amend the Criminal Information, 10/10/19. Following oral argument on the morning of trial, the trial court granted the Commonwealth leave to amend the information. **See** Order, 10/15/19. However, the Commonwealth did not file the amended information until the day after trial, when the jury's verdict had already been recorded and it did not include the offense of DUI—BAC 0.08%-0.10% in the amended information. **See** Verdict, 10/15/19; Amended Information, 10/16/19. Subsequently, Ressman was sentenced only for the count of DUI—BAC 0.10%-0.159% and careless driving. **See** Sentencing Order, 12/6/19.

- 13 -

After sentencing, Ressman filed a post-sentence motion challenging the sufficiency and weight of the evidence to support his conviction for DUI—BAC 0.10%-0.159%, the single DUI offense for which he was convicted and sentenced. In disposing of these claims, the trial court correctly distinguished between the standard governing sufficiency and weight claims and the appropriate relief for each type of claim based on **Sibley**, **supra**, and **Landis**, **supra**. **See** Opinion on Post-Sentence Motion, 5/26/20, at 5-6; **Widmer**, **supra**, at 751 (explaining that a successful sufficiency claim results in complete discharge while a successful weight claim results in a new trial). In **Landis**, this Court remanded for a new trial on the charge of DUI—BAC greater than 0.16%, as we concluded that the verdict was against the weight of the evidence for that charge only. **Landis**, **supra**, at 701. The trial court correctly reached the same resolution here, where the weight of the evidence did not support the jury's verdict as to the charge of DUI—BAC 0.10%-0.159% only.[10] No relief is due.

_____

[10] The Commonwealth argues that because the jury checked "guilty" on the verdict slip next to "DUI—Blood Alcohol Concentration Greater than 0.08%," it implicitly found that Ressman was at least guilty of DUI—BAC 0.08%-0.10% as a lesser-included offense. However, the trial court instructed the jury regarding this lesser-included offense and the jury ultimately chose to convict Ressman on the higher charge. Notes of Testimony, 10/15/19, at 183-85. Moreover, the subcommittee note to the standard jury instruction that the verdict slip was based upon makes clear that the form was chosen merely to allow the jury to clearly determine what BAC level had been proven beyond a reasonable doubt. **See** Pennsylvania Suggested Standard Criminal Jury Instructions § 17.3802(A)(2), note ("This instruction was drafted based on the

## C.

Finally, the Commonwealth claims that the trial court erred in granting the post-sentence motion in arrest of judgment related to the careless driving charge.[11] However, the Commonwealth mischaracterizes the trial court's ruling by contending that the trial court improperly granted relief based on the weight of the evidence, arguing that this decision was improper when the trial court sat as fact-finder for the offense at trial. *See* Commonwealth's Brief at 28. The trial court's opinion and order disposing of the post-sentence motion granted relief based on the sufficiency of the evidence to support the careless driving charge, not the weight of the evidence. *See* Opinion on Post-Sentence Motion, 5/26/20, at 9-10, 12. As discussed in Part II.A & II.B, *supra*, challenges to the sufficiency and weight of the evidence are distinct,

---

assumption that a typical jury trial on these charges will require the jury to determine conflicting allegations about the defendant's [BAC] at the time of the alleged offense. Accordingly, the instruction is drafted in order to facilitate the jury's determination of this fact. It is assumed that the jury will be given a special verdict form on which to indicate its findings."). Finally, while a jury sitting as fact-finder may elect to convict on an uncharged lesser-included offense, the Commonwealth cites no authority for the proposition that the trial court may reduce a jury's verdict to a lesser-included charge when ruling on a weight claim. *Commonwealth v. Houck*, 102 A.3d 443, 449-50 (Pa. Super. 2014).

[11] When reviewing a trial court's grant of a motion in arrest of judgment, "we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, is sufficient to support all elements of the offense." *Commonwealth v. Robinson*, 33 A.3d 89, 94 (Pa. Super. 2011). We review the entire trial record and all evidence in the light most favorable to the Commonwealth. *Id.* (citation omitted).

implicating different scopes and standards of review and necessitating different relief. **See also Widmer**, **supra**. To the extent that the Commonwealth intended to challenge the trial court's decision regarding the sufficiency of the evidence, this claim is waived for failure to develop it in its brief. **See** Pa.R.A.P. 2119; **Commonwealth v. Miller**, 212 A.3d 1114, 1131 (Pa. Super. 2019).

Moreover, even if the Commonwealth had preserved this claim we would conclude that the trial court did not err in granting the motion in arrest of judgment. "When ruling on a motion in arrest of judgment, a trial court is limited to ascertaining the absence or presence of that quantum of evidence necessary to establish the elements of the crime. At this stage in the proceedings, the trial court is limited to rectifying trial errors, and cannot make a redetermination of credibility and weight of the evidence. The authority of a trial court over a nonjury verdict is no greater than the authority over a jury verdict." **Commonwealth v. Melechio**, 658 A.2d 1385, 1387 (Pa. Super. 1995) (cleaned up). As a result, the trial court was limited to examining the trial record to determine whether the evidence was sufficient to support the conviction for careless driving beyond a reasonable doubt. **Id.**

A person is guilty of careless driving if he or she "drives a vehicle in careless disregard for the safety of persons or property." 75 Pa.C.S. § 3714(a). Careless disregard "implies less than willful or wanton conduct but more than ordinary negligence or the mere absence of care under the

circumstances." ***Commonwealth v. Ford***, 141 A.3d 547, 556 (Pa. Super. 2016) (citation omitted) (holding that evidence was sufficient to establish careless driving when defendant drove at 52 MPH in a residential neighborhood and tried to drive away from a traffic stop while an officer was kneeling on the passenger seat with the door open); ***see also Commonwealth v. Gezovich***, 7 A.3d 300, 302 (Pa. Super. 2010) (holding that "mere occurrence of an accident" was insufficient to establish careless disregard when there was no further evidence regarding defendant's driving).

Trooper Bower testified at trial regarding Ressman's driving prior to the traffic stop. Trooper Bower observed Ressman's vehicle "swerving from the double yellow line to the fog line, back and forth, with oncoming traffic coming the other way." Notes of Testimony, 10/15/19, at 40. He followed the vehicle for three-quarters of a mile to a mile and observed the vehicle "swerving within the lane and going from line to line." ***Id.*** at 41. It is unclear from the record how many times the vehicle weaved within the lane, but Trooper Bower testified that when he observes weaving, he initiates a stop immediately to prevent the driver from crossing into the other lane and causing an accident. ***Id.*** at 64. He clarified that Ressman did not cross into the other lane, but his tires did appear to touch the double yellow line. ***Id.*** at 65. After running the license plate, he also determined that the registered owner of the vehicle had an expired driver's license. ***Id.*** at 40. Trooper Bower offered no further testimony regarding Ressman's driving, such as whether he was speeding,

obeying traffic signals or whether he signaled when he turned into a parking lot for the traffic stop.

The trial court correctly concluded that without more evidence that Ressman's vehicle was weaving within its lane was insufficient to establish the "more than ordinary negligence or the mere absence of care under the circumstances" required for a conviction for careless driving. **Ford**, **supra**. Simply weaving within a lane of traffic, without entering the opposing lane, causing damage to persons or property, or requiring other drivers to make maneuvers to avoid incident does not rise to the level of careless driving.[12] The trial court did not err in granting the motion for arrest of judgment on this claim.[13]

_____

[12] We also note that the jury acquitted Ressman of the charge of DUI—general impairment under 75 Pa.C.S. § 3802(a)(1), which differs from DUI—BAC 0.10%-0.159% in that it requires proof that the defendant was "incapable of safely driving."

[13] We have previously concluded that "intoxication alone is insufficient to support a _reckless_ driving conviction." **Commonwealth v. Jeter**, 937 A.2d 466, 468 (Pa. Super. 2007) (emphasis added). Careless driving is a lesser-included offense of reckless driving and requires a _mens rea_ of "careless disregard," rather than "willful or wanton disregard." **Commonwealth v. Bullick**, 830 A.2d 998, 1001-02 (Pa. Super. 2003). While the standard for establishing careless driving is lower, when considering whether driving under the influence is reckless _per se_, this Court observed "[s]ome people may respond to alcohol by driving in a brazen and inherently reckless manner.... Other individuals may not exhibit any distinguishable difference in their driving even though they may be legally intoxicated. Indeed, some more prescient individuals, aware that they have ingested some alcohol, may even compensate for their consumption by being very cautious in their driving." **Commonwealth v. Mastromatteo**, 719 A.2d 1081, 1083 n.4 (Pa. Super.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/26/21

_____

1998).  Thus, "other tangible indicia of unsafe driving to a degree that creates a substantial risk of injury which is consciously disregarded" is required to prove recklessness while driving under the influence.  **Id.** at 1083.  Even under the standard of careless driving, we conclude that while Ressman's BAC indicated that he was driving under the influence, the evidence regarding his driving did not establish "more than ordinary negligence or the mere absence of care under the circumstances."  **Ford, supra**.